This Opinion is a
Precedent of the TTAB

Mailed:
December 18, 2014

## United States Patent and Trademark Office

Trademark Trial and Appeal Board

————

*In re Covalinski*

————

Serial No. 85685983

————

Steven Fisher-Stawinski, of The Gray Law Group, Ltd., representing Lisa
   Covalinski.

Marc J. Leipzig, Trademark Examining Attorney, Law Office 115 (John Lincoski,
   Managing Attorney).

————

Before Seeherman, Taylor, and Wolfson, Administrative Trademark Judges.

Opinion by Wolfson, Administrative Trademark Judge:

Lisa Covalinski ("Applicant") seeks registration on the Principal Register of

the mark REDNECK RACEGIRL and design, depicted below:



for "Athletic apparel, namely, shirts, pants, jackets, footwear, hats and caps,

athletic uniforms," in International Class 25.[1]

---

[1] Application Serial No. 85685983 was filed on July 25, 2012, based on Applicant's
allegation of a bona fide intent to use the mark in commerce under Trademark Act § 1(b).

The Trademark Examining Attorney has refused registration of Applicant's mark under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d), contending that Applicant's use of her mark for the identified goods is likely to cause confusion with the mark RACEGIRL (in standard character format) for "Caps; Jerseys; Leather belts; Short sets; Tops; Shirts; Shorts; Jackets; Blouses; Caps with visors; Crop tops; Hat bands; Hats; Knitted caps; Sweat bands; Sweat pants; Tank tops; Visors" in International Class 25.[2]

After the Examining Attorney made the refusal final, Applicant appealed to this Board. For the reasons discussed more fully below, we reverse the refusal to register.

Our determination under Trademark Act § 2(d) is based on an analysis of the probative facts in evidence that are relevant to the factors bearing on a likelihood of confusion. See *In re E.I. du Pont de Nemours & Co.,* 476 F.2d 1357, 177 USPQ 563 (CCPA 1973); *see also Palm Bay Imp., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772,* 396 F.3d 1369, 73 USPQ2d 1689 (Fed. Cir. 2005); *In re Majestic*

The colors black, white, and gray are claimed as a feature of the mark, and the application contains the following description of the mark:

> The mark consists of two large capital letters 'R', the first in the upper left and the second lower and to the right; each capital letter contains a wavy black and white checkerboard pattern resembling a racing flag that fades to black via intermediate shades of gray from the left to the right sides of the letter R; the lower right stem of each letter R becomes a long black text container that expands vertically from the left to the right; the text container attached to the first letter R is on top of the second letter R, except that the checkerboard pattern is present on the portion of the text container that is over the second letter R; each text container terminates on the right in a white heart shape; white capital letters "EDNECK" fill the first text container and combine with the first letter R to form the word "REDNECK"; white capital letters "ACEGIRL" fill the first [sic, second] text container and combine with the first [sic, second] letter R to form the word "RACEGIRL".

Prior to publication, the typographical error in the description of the mark will be corrected.

[2] Reg. No. 3351313; registered December 11, 2007; Section 8 affidavit accepted.

*Distilling Co., Inc.*, 315 F.3d 1311, 65 USPQ2d 1201 (Fed. Cir. 2003); and *In re Dixie Rests. Inc.,* 105 F.3d 1405, 41 USPQ2d 1531 (Fed. Cir. 1997). In considering the evidence of record on these factors, we keep in mind that "[t]he fundamental inquiry mandated by Section 2(d) goes to the cumulative effect of differences in the essential characteristics of the goods and differences in the marks." *Federated Foods, Inc. v. Fort Howard Paper Co.,* 544 F.2d 1098, 192 USPQ 24, 29 (CCPA 1976); *see also In re Azteca Rest. Enters., Inc.,* 50 USPQ2d 1209 (TTAB 1999). Applicant and the Examining Attorney have limited their evidence and arguments to the *du Pont* factors of the similarity of the goods, similarity of trade channels and similarity of the marks, and we therefore do the same.[3]

First we compare Applicant's and Registrant's respective goods as they are identified in the application and each registration. *See Stone Lion Capital Partners, LP v. Lion Capital LLP,* 746 F.3d 1317, 110 USPQ2d 1157, 1161 (Fed. Cir. 2014); *Octocom Systems, Inc. v. Houston Computers Services Inc.,* 918 F.2d 937, 16 USPQ2d 1783, 1787 (Fed. Cir. 1990). *See also, Hewlett-Packard Co. v. Packard Press Inc.,* 281 F.3d 1261, 62 USPQ2d 1001 (Fed. Cir. 2002). Applicant is seeking to register her mark for "Athletic apparel, namely, shirts, pants, jackets, footwear, hats and caps, athletic uniforms." The Registrant's mark is registered for, *inter alia,* caps, shirts, jackets, and sweat pants. Because Applicant's athletic apparel items

---

[3] Although Applicant also argues that "racegirl" is a generic term, *Appeal Brief* p. 5, 4 TTABVue 6, the argument is unavailing. Applicant may not collaterally attack a cited registration in this manner. *In re Dixie Restaurants Inc.,* 41 USPQ2d 1531, 1534 (Fed. Cir. 1997) (*ex parte* proceeding is not the proper forum for challenge to *prima facie* presumption of validity of cited registration.); *In re Fiesta Palms LLC*, 85 USPQ2d 1360, 1363 (TTAB 2007).

are encompassed within Registrant's identified goods (or, in the case of "sweat pants," Registrant's goods are encompassed by Applicant's broader term "pants"), Applicant's goods are in-part legally identical to those in the cited registration. While the remaining goods are also clothing, we need not discuss the similarity of all of Applicant's goods because it is sufficient for a refusal based on likelihood of confusion that relatedness is established for any item encompassed by the identification of goods in the application. *Tuxedo Monopoly, Inc. v. General Mills Fun Group*, 648 F.2d 1335, 209 USPQ 986, 988 (CCPA 1981); *Apple Computer v. TVNET.Net, Inc.*, 90 USPQ2d 1393, 1397 (TTAB 2007). In addition, because the goods are identical in-part, the channels of trade and classes of purchasers for those goods are considered to be the same. *See In re Viterra Inc.*, 671 F.3d 1358, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012) (even though there was no evidence regarding channels of trade and classes of consumers, the Board was entitled to rely on this legal presumption in determining likelihood of confusion); *In re Yawata Iron & Steel Co.*, 403 F.2d 752, 159 USPQ 721, 723 (CCPA 1968); *Edom Laboratories Inc. v. Lichter,* 102 USPQ2d 1546, 1550 (TTAB 2012); *American Lebanese Syrian Associated Charities Inc. v. Child Health Research Institute*, 101 USPQ2d 1022, 1028 (TTAB 2011). Moreover, in her reply brief, Applicant states that she "claims no distinction between the goods (clothing in both cases) or any limitation to the trade channels."[4]

---

[4] 7 TTABVue 3.

Accordingly, we find that the *du Pont* factors of the similarity of the goods and channels of trade favor a finding of likelihood of confusion.

However, despite this, we find that confusion is not likely because of the crucial differences between the marks. In comparing the marks, we recognize that "[T]he proper test is not a side-by-side comparison of the marks, but instead 'whether the marks are sufficiently similar in terms of their commercial impression' such that persons who encounter the marks would be likely to assume a connection between the parties." *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 101 USPQ2d 1713, 1721 (Fed. Cir. 2012) (citation omitted). While we must consider the marks in their entireties, it is entirely appropriate to accord greater importance to the more distinctive elements in the marks. *See In re Nat'l Data Corp.*, 753 F.2d 1056, 224 USPQ 749, 751 (Fed. Cir. 1985). Here, Applicant's design mark includes the very large, prominently displayed letters RR. The bodies of the Rs are filled with a checkerboard pattern resembling a racing flag. To each R an elongated horizontal "leg" of gradually increasing thickness is appended, each of which ends in a heart design. Inside the legs appear the rest of the letters (i.e., the letter strings "edneck" and "acegirl"), in a form in which the initial letters of each string are displayed in relatively tiny typeface and subsequent letters are displayed in increasing thickness. Together, these graphic devices serve not only to draw attention to the RR letters apart from the wording, but also make the letters that form the "a-c-e" of the word "RACEGIRL" difficult to notice. Since these goods are clothing, consumers would be likely to encounter the mark in a retail setting on

hang tags or neck labels. In that context, the visual impression of the mark is likely to be more important.

We note the Examining Attorney's argument that the words REDNECK RACEGIRL are the dominant feature in Applicant's mark because the literal portion of a word and design mark generally makes the greatest impact on a prospective customer, and his further argument that, because of the similarity of the words REDNECK RACEGIRL and RACEGIRL, the marks are confusingly similar. While it is often true that the words in a composite word and design mark are considered to be dominant, that is not always the case. In *Viterra,* the Federal Circuit acknowledged this general rule while affirming a Board decision that found the dominant portion of the registered mark  was the literal portion (X-SEED) rather than the stylized letter "X" alone, *see* 101 USPQ2d at 1911; but it also found no inconsistency between the Board's *Viterra* decision and its earlier decision in *In re White Rock Distilleries, Inc.,* 92 USPQ2d 1282, 1284 (TTAB 2009), wherein the Board found no likelihood of confusion between applicant's standard character mark VOLTA for caffeine-infused vodka and the cited mark (shown below) for wines, due to the prominent design in the registered mark:

TERZA
VOLTA.

*See also Ferro Corp. v. Ronco Labs., Inc.,* 356 F.2d 122, 124, 148 USPQ 497, 498-99

(CCPA 1966) (confusion was unlikely between applicant's mark  and

several marks owned by opposer consisting of or containing FERRO, due to the

dominance of the design elements of applicant's mark and the relatively small

typeface in which FERRO appeared);[5] *accord Parfums de Coeur Ltd. v. Lazarus,* 83

USPQ2d 1012 (TTAB 2007) (prominently displayed design considered to be

dominant element of the mark **BODYMAN** because it catches the eye and engages the

viewer before the viewer looks at the word "Bodyman"); *Steve's Ice Cream v. Steve's*

*Famous Hot Dogs,* 3 USPQ2d 1477, 1478-79 (TTAB 1987) (no likelihood of confusion

between [STEVE'S figure] for restaurant services and STEVE'S for ice cream; "Even with

the word 'STEVE'S' appearing above the hot dog figures, applicant's mark is

distinguishable from the registered mark of opposer, which is simply the word

'STEVE'S' in block letter form.").

For the reasons discussed above, we find that the overall commercial

impression of Applicant's mark is dominated by its design features, particularly the

large double-letter RR configuration, and that this weighs heavily against a

conclusion that confusion is likely.

---

[5] The Court added that it did not believe that the opposer was, "by virtue of prior registrations, entitled to the sole possession of the term 'ferro.'" 148 USPQ at 499.

We readily acknowledge that "when marks would appear on virtually identical goods or services, the degree of similarity necessary to support a conclusion of likely confusion declines." *In re Mighty Leaf Tea,* 601 F.3d 1342, 94 USPQ2d 1257, 1260 (Fed. Cir. 2010) *citing Century 21 Real Estate Corp. v. Century Life of Am.,* 970 F.2d 874, 23 USPQ2d 1698 (Fed. Cir. 1992). But Applicant's mark is so different from the registered mark that even when used on in-part identical goods, confusion is unlikely. "No mechanical rule determines likelihood of confusion, and each case requires weighing of the facts and circumstances of the particular mark." *Mighty Leaf,* 94 USPQ2d at 1259.

In sum, we find the first *du Pont* factor, the differences between the marks, to outweigh the other factors. *See Champagne Louis Roederer S.A. v. Delicato Vineyards,* 148 F.3d 1373, 47 USPQ2d 1459, 1460-61 (Fed. Cir. 1998) (Federal Circuit affirmed Board finding of no likelihood of confusion between mark CRYSTAL CREEK for wine and marks CRISTAL for wine and CRISTAL CHAMPAGNE for champagne, where Board relied solely on dissimilarity of marks); *Kellogg Co. v. Pack'em Enterprises Inc.,* 951 F.2d 330, 21 USPQ2d 1142, 1145 (Fed. Cir. 1991) ("We know of no reason why, in a particular case, a single *du Pont* factor may not be dispositive").

*Decision*: The refusal to register Applicant's mark is reversed.