**UNITED STATES PATENT AND TRADEMARK OFFICE**
**Trademark Trial and Appeal Board**
**P.O. Box 1451**
**Alexandria, VA 22313-1451**
General Contact Number: 571-272-8500
General Email: TTABInfo@uspto.gov

wbc

Original Decision Mailed: March 22, 2022
Redesignation Mailed: May 23, 2022

Opposition No. 91256368

*Conopco, Inc.*

*v.*

*Transom Symphony OpCo, LLC DBA*
*Beauty Quest Group*

**By the Trademark Trial and Appeal Board:**

The Board has chosen to redesignate the decision issued on March 22, 2022 as a precedent. A copy of the decision, bearing such a designation, is attached.

The decision that issued on March 22, 2022 is also corrected as follows: page 9, last sentence, "reigstrations" has been changed to "registrations"; page 10, heading B, "Likelhood" has been changed to "Likelihood"; page 12, first sentence of the last paragraph, "Appicant's" has been changed to "Applicant's" and the last sentence of the last paragraph, "Morever" has been changed to "Moreover"; page 14, first sentence, "chracters" has been changed to "characters"; page 16, second to last paragraph, a comma was added after "Accordingly" and in heading 3, "Repect" has been changed to "Respect"; and page 19, last sentence of the first paragraph, "Accodingly" has been changed to "Accordingly."

THIS DECISION IS
A PRECEDENT OF
THE TTAB

UNITED STATES PATENT AND TRADEMARK OFFICE
**Trademark Trial and Appeal Board**
**P.O. Box 1451**
**Alexandria, VA 22313-1451**
General Contact Number: 571-272-8500
General Email: TTABInfo@uspto.gov

wbc

Mailed:  March 22, 2022

Opposition No. 91256368

*Conopco, Inc.*

*v.*

*Transom Symphony OpCo, LLC DBA*
*Beauty Quest Group*

**Before Larkin, Coggins and English,**
**Administrative Trademark Judges.**

**By the Board:**

No main brief having been filed by Opposer, the Board issued an order on November 19, 2021, under Trademark Rule 2.128(a)(3), allowing Opposer thirty days in which to show cause why its failure to file a main brief on the case should not be treated as a concession of the case. 7 TTABVUE. Now before the Board is Opposer's December 20, 2021 response in the form of a motion to reopen its discovery and trial period. 8 TTABVUE 2. Applicant filed a brief in opposition thereto. 10 TTABVUE.[1]

---

[1] Applicant also filed a motion to dismiss the opposition pursuant to Trademark Rule 2.132(b), mistakenly referencing Trademark Rule 2.132(a). *See* 9 TTABVUE. Because that motion is manifestly late, we give it no consideration. Trademark Rule 2.132(c), 37 C.F.R. § 2.132(c).

## I.  Background

Transom Symphony OpCo, LLC DBA Beauty Quest Group ("Applicant") seeks to register the mark LUX ENHANCER, in standard characters with ENHANCER disclaimed, for "hair bleach; hair bleaching preparations; hair care preparations; hair color; hair gels; hair styling preparations; hair conditioner; hair mousses; hair pomades; hair shampoo; hair spray; hair gel and hair mousse; hair styling spray; non-medicated cosmetic soap; non-medicated preparations all for the care of hair and scalp; styling mousse" in International Class 3.[2]

Conopco, Inc. ("Opposer") opposes registration of Applicant's mark, alleging a likelihood of confusion with its prior used and registered mark LUX, in typed format, for "soap for general washing and cleaning" in International Classes 3 and 5,[3] and the stylized mark for "soap and body cleansing wash" in International Class 3.[4] Applicant's answer denies the salient allegations in the notice of opposition.

---

[2] Application Serial No. 88567179 was filed August 5, 2019 under Trademark Act Section 1(b), 15 U.S.C. § 1051(b).

[3] Registration No. 681254 issued June 30, 1959; four times renewed. *See* 1 TTABVUE 4-5, 7-14.

[4] Registration No. 4060585 issued November 22, 2011; Section 8 accepted; Section 15 acknowledged. *See* 1 TTABVUE 4-5, 15-19.

On July 24, 2020, Applicant filed, concurrently with its answer,[5] an unconsented motion to amend the identification of goods in its application as follows (deletions shown in strikethrough; additions shown in bold):

> ~~hair bleach; hair bleaching preparations;~~ hair care preparations; ~~hair color; hair gels; hair styling preparations; hair conditioner; hair mousses; hair pomades; hair shampoo; hair spray; hair gel and hair mousse; hair styling spray; non-medicated cosmetic soap; non-medicated preparations all for the care of hair and scalp; styling mousse~~, **excluding soap and body cleaning wash, and distributed through and used by hair stylists and other hair care professionals**

5 TTABVUE 2.

Applicant argued that while it "disagrees that there is a likelihood of confusion" between its mark for the applied-for goods and Opposer's pleaded LUX marks, "the proposed amendment further distinguishes" its mark "thereby eliminating any likelihood of confusion …. Thus, Applicant is at least entitled to registration [of its mark] with the proposed limited identification of goods." 5 TTABVUE 2-3. The Board deferred consideration of the unconsented motion "until final decision or until the case is decided upon motion for summary judgment" and noted that "[d]ates remain as previously set" by the Board's institution order. 6 TTABVUE 1.

---

[5] In its answer:

Applicant admits that the Subject Application currently covers the goods in Class 3 quoted in paragraph 7 of the Opposition, but denies that such goods are "offered by…and/or [are] highly related" to goods offered by Opposer under Opposer's alleged LUX mark, especially if the proposed amendment to further limit the identification of goods in the Subject Application requested in Applicant's Motion To Amend Application filed on July 24, 2020 is accepted.

4 TTABVUE 3 at ¶7.

Pursuant to the Board's institution order, Opposer's discovery period closed February 20, 2021, its trial period closed May 21, 2021, and its main brief on the case was due November 2, 2021. None of these deadlines was extended. 2 TTABVUE 3.

## II. Show Cause Order Discharged

Opposer's response to the Board's November 19, 2021 show cause order indicates that it has not lost interest in this case. It is the policy of the Board not to enter judgment against a plaintiff for failure to file a main brief where the plaintiff, in its response to the show cause order, indicates that it has not lost interest in the case. *See Vital Pharms. Inc. v. Kronholm*, 99 USPQ2d 1708, 1710 (TTAB 2011); TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE (TBMP) §§ 536 and 801.02(a) (2021). Inasmuch as it is clear that Opposer has not lost interest in this case, the show cause order under Trademark Rule 2.128(a)(3) is **discharged** and judgment will not be entered against Opposer based on a loss of interest in this case.

## III. Motion to Reopen

Even where a plaintiff has shown that it is still interested in having the Board decide the case on its merits in response to a show cause order under Trademark Rule 2.128(a)(3), as is the case here, expired deadlines are not necessarily reset. *See Vital Pharms.*, 99 USPQ2d at 1710. Opposer must show excusable neglect to reopen the discovery period and its trial period, as requested. *See, e.g., id.* at n.11; *Gaylord Ent. Co. v. Calvin Gilmore Prods. Inc.*,

4

59 USPQ2d 1369, 1372 (TTAB 2000). *See also* Fed. R. Civ. P. 6(b)(1)(B); TBMP §§ 509.01(b)(1) and 536.

In analyzing whether a party has shown excusable neglect, within the context of all relevant circumstances, we consider:

> [1] the danger of prejudice to the [nonmovant], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith.

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P.,* 507 U.S. 380, 395 (1993). These factors do not carry equal weight. *See FirstHealth of the Carolinas Inc. v. CareFirst of Md. Inc.,* 479 F.3d 825, 81 USPQ2d 1919, 1921-22 (Fed. Cir. 2007) (Court affirmed finding of no excusable neglect based on second and third factors, with third weighed heavily in the analysis). We note that several courts have stated that the third factor may be considered the most important in any particular case. *See, e.g., Pumpkin Ltd. v. Seed Corps,* 43 USPQ2d 1582, 1586 n.7 (TTAB 1997).

A. The Parties' Arguments

Opposer argues its discovery and trial periods should be reopened "[f]or at least two reasons":

> First, Opposer was awaiting an initial ruling by the Board with respect to the proposed amendments to the Application. Upon further review, it appears that Opposer may have awaited such a ruling in error. Second, and even more importantly, Opposer has just learned that Applicant is distributing goods under the LUX ENHANCER mark outside of this limitation and to the general public through big box stores.

8 TTABVUE 2.

In response, Applicant asserts, supported by the declaration of its attorney, that "Opposer presents irrelevant and misleading facts to fabricate the appearance of excusable neglect," but has "failed to make a showing of excusable neglect and failed to prosecute the opposition in its entirety without good cause." 10 TTABVUE 2-3.

B. Analysis

Applying the *Pioneer* analysis, we consider whether Opposer's failure to serve discovery, and submit evidence during its trial period, is the result of excusable neglect.

With regard to the danger of prejudice to Applicant, the mere passage of time is generally not considered prejudicial, absent the presence of other facts, such as the loss of potential witnesses, which has not been alleged here. *See Pumpkin, Ltd. v. Seed Corps,* 43 USPQ2d at 1587. Although the delay may not be prejudicial to Applicant, the Board finds that the length of the delay occasioned by Opposer's failure to take discovery or submit evidence in support of its case during its trial period is substantial. The discovery period opened August 24, 2020, and closed February 20, 2021, and Opposer's trial period opened April 22, 2021, and ended May 21, 2021, yet it did not seek to extend either period, or to reopen them, until after the Board issued its November 19, 2021 show cause order. Opposer now seeks to turn the clock back almost nineteen months (to the opening of the discovery period).

Further, while there is no evidence Opposer acted in bad faith, Opposer has offered no reasons why it was not diligent in prosecuting this case, except to say it erroneously awaited a ruling on Applicant's motion to amend and has recently discovered information about the scope of Applicant's use. The Board's September 21, 2020 order was clear that the motion to amend was deferred and that all dates "remain[ed] as previously set." 6 TTABVUE 1. Opposer is silent on why it did not conduct discovery during the period for discovery, which was a time for Opposer to gather information about Applicant's use of the mark. To the extent Opposer feebly states that the parties "discussed a potential resolution" to the case, 8 TTABVUE 3, Applicant's timeline reveals that settlement negotiations ended on July 20, 2020 – prior to the filing of an answer in this proceeding. 10 TTABVUE 5, 15; *see Vital Pharms.*, 99 USPQ2d at 1711 ("the purported existence of settlement discussions, simply did not prevent opposer either from taking testimony during the assigned period or filing a timely brief, or filing timely requests to extend either period prior to the expiration of the period"); *Baron Philippe de Rothschild S.A. v. Styl-Rite Optical Mfg. Co.*, 55 USPQ2d 1848, 1852 (TTAB 2000) (counsel's docketing error wholly within counsel's control). We find the reason for the delay was completely within Opposer's control and this weighs strongly against finding excusable neglect.

C.  Conclusion

After careful consideration of the *Pioneer* factors and the circumstances of this case, we find that Opposer's failure to take discovery and to submit evidence during its trial period was not the result of excusable neglect. Accordingly, Opposer's motion to reopen the discovery period and its trial period is **denied**. In view thereof, to the extent Opposer's motion may be construed as also seeking to reopen its time to file a brief on the case, the motion also is **denied**.

## IV.  Likelihood of Confusion

In the notice of opposition, Opposer asserts likelihood of confusion as its only claim. Although we do not reopen the period for discovery, or Opposer's trial or briefing periods, Opposer introduced status and title copies of its pleaded registrations with its notice of opposition (1 TTABVUE 6-19).[6] Accordingly, we now consider this evidence, along with Applicant's application file that is automatically of record in this proceeding, Trademark Rule 2.122(b)(1), to determine the merits of the opposition.

---

[6] When a plaintiff submits with its pleading a copy of its registration from the electronic database records of the USPTO, such as the TSDR (Trademark Status & Document Retrieval) database, showing the current status and title of the registration, the registration will be received into evidence and made part of the record. Trademark Rule 2.122(d)(1); *see Vital Pharms*, 99 USPQ2d at 1709; *Bausch & Lomb Inc. v. Karl Storz GmbH & Co. KG*, 87 USPQ2d 1526, 1530 n.4 (TTAB 2008).

A. Entitlement[7] and Priority

Entitlement to a statutory cause of action must be established in every inter partes case. *See Australian Therapeutic Supplies Pty. Ltd. v. Naked TM, LLC*, 965 F.3d 1370, 2020 USPQ2d 10837, at *3 (Fed. Cir. 2020), *cert. denied*, 142 S. Ct. 82 (2021) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 109 USPQ2d 2061, 2067 n.4 (2014)). A party in the position of plaintiff may oppose an application or petition to cancel a registration when such opposition or cancellation is within the zone of interests protected by the statute, 15 U.S.C. §§ 1063, 1064, and the plaintiff has a reasonable belief in damage that is proximately caused by registration of the mark. *Corcamore, LLC v. SFM, LLC*, 978 F.3d 1298, 2020 USPQ2d 11277, at *6-7 (Fed. Cir. 2020), *cert. denied*, 141 S. Ct. 2671 (2021).

In view of Opposer's ownership of valid and subsisting registrations and because Opposer's registrations form the basis of a plausible Section 2(d) claim, Opposer has established its entitlement to bring this statutory cause of action. Trademark Rule 2.122(d); *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 55 USPQ2d 1842, 1844 (Fed. Cir. 2000); *Lipton Indus., Inc. v. Ralston Purina Co.*, 670 F.2d 11024,213 USPQ 185, 189 (CCPA 1982). In addition, because Applicant has not counterclaimed to cancel Opposer's registrations,

---

[7] Board decisions have previously analyzed the requirements of Sections 13 and 14 of the Trademark Act, 15 U.S.C. §§ 1063-64, under the rubric of "standing." Despite the change in nomenclature, our prior decisions and those of the Federal Circuit interpreting Sections 13 and 14 remain applicable. *See Spanishtown Enters., Inc. v. Transcend Res., Inc.*, 2020 USPQ2d 11388, at *2 (TTAB 2020); TBMP § 309.03(b).

priority is not an issue as to the marks and goods covered by the registrations. *King Candy Co., Inc. v. Eunice King's Kitchen, Inc.*, 496 F.2d 1400, 182 USPQ 108 (CCPA 1974); *L'Oreal S.A. v. Marcon*, 102 USPQ2d 1434, 1436 n.7 (TTAB 2012).

B. Likelihood of Confusion as to Applicant's Original, Unamended Goods

We first consider the original, unamended description of goods in our likelihood of confusion analysis. *Embarcadero Techs., Inc. v. RStudio, Inc.,* 105 USPQ2d 1825, 1829 (TTAB 2013). In assessing whether there is a likelihood of confusion, we focus on the registration of Opposer's stylized mark

because the goods covered by this registration (soap and body cleansing wash) are closer to Applicant's goods than the goods covered by Opposer's registration for LUX in typed form. *See Sock It To Me, Inc. v. Fan,* 2020 USPQ2d 10611, at *6 (TTAB 2020) (confining 2(d) analysis to most similar pleaded mark).

Our determination under Section 2(d) is based on an analysis of all of the facts in evidence that are relevant to the factors bearing on the likelihood of confusion issue. *See In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563 (CCPA 1973) ("*DuPont*"); *In re Majestic Distilling Co., Inc.*, 315 F.3d 1311, 65 USPQ2d 1201 (Fed. Cir. 2003). In any likelihood of confusion analysis, two key considerations are the similarities between the marks and the similarities between the goods. *See Mattel Inc. v. Funline Merch. Co.*, 81

10

USPQ2d 1372, 1374 (TTAB 2006); *Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 192 USPQ 24 (CCPA 1976).

1. Similarity of the Marks

We start with the first *DuPont* factor focusing on the similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression. *Stone Lion Capital Partners, LP v. Lion Capital LLP,* 746 F.3d 1317, 110 USPQ2d 1157, 1160 (Fed. Cir. 2014); *DuPont*, 177 USPQ at 567. "Similarity in any one of these elements may be sufficient to find the marks confusingly similar." *In re Inn at St. John's, LLC*, 126 USPQ2d 1742, 1746 (TTAB 2018), *aff'd mem.*, 777 F. App'x 516 (Fed. Cir. 2019) (citing *In re Davia*, 110 USPQ2d 1810, 1812 (TTAB 2014)).

The issue is not whether the marks can be distinguished when subjected to a side-by-side comparison, but rather whether the marks are sufficiently similar in terms of their overall commercial impression such that confusion as to the source of the goods offered under the respective marks is likely to result. *Coach Servs., Inc. v. Triumph Learning LLC,* 668 F.3d 1356, 101 USPQ2d 1713, 1721 (Fed. Cir. 2012). The focus is on the recollection of the average purchaser, who normally retains a general rather than specific impression of trademarks. *Geigy Chem. Corp. v. Atlas Chem. Indus., Inc.*, 438 F.2d 1005, 169 USPQ 39, 40 (CCPA 1971); *L'Oreal S.A. v. Marcon*, 102 USPQ2d at 1438; *Sealed Air Corp. v. Scott Paper Co.*, 190 USPQ 106, 108 (TTAB 1975).

We do not predicate our analysis on a dissection of the involved marks; we consider the marks in their entireties. *Stone Lion*, 110 USPQ2d at 1160; *Franklin Mint Corp. v. Master Mfg. Co.*, 667 F.2d 1005, 212 USPQ 233, 234 (CCPA 1981) ("It is axiomatic that a mark should not be dissected and considered piecemeal; rather, it must be considered as a whole in determining likelihood of confusion."). It is well-settled, however, that one feature of a mark may be more significant than another, and it is not improper to give more weight to this dominant feature in determining the commercial impression created by the mark. *See Stone Lion*, 110 USPQ2d at 1161 (finding that the Board did not err in reasoning that the term LION was dominant in both applicant's mark STONE LION CAPITAL and opposer's marks LION CAPITAL and LION); *Coach Servs.*, 101 USPQ2d at 1721; *Leading Jewelers Guild, Inc. v. LJOW Holdings, LLC*, 82 USPQ2d 1901, 1905 (TTAB 2007).

We find that the term LUX is the dominant part of Applicant's mark. It is the first word in Applicant's mark and most likely to be impressed on consumers and remembered. *Presto Prods. Inc. v. Nice-Pak Prods. Inc.*, 9 USPQ2d 1895, 1897 (TTAB 1988) ("[I]t is often the first part of a mark which is most likely to be impressed upon the mind of a purchaser and remembered[.]"). Moreover, the second word in Applicant's mark, ENHANCER, merely describes and is laudatory for Applicant's products used to enhance a person's hair and skin, and has been disclaimed. Accordingly, ENHANCER is subordinate to the term LUX in Applicant's mark and unlikely

12

to change the overall commercial impression of the mark. *See e.g., Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 1372, 73 USPQ2d 1689, 1692 (Fed. Cir. 2005) (finding the same "first word in both parties' marks renders the marks similar, especially in light of the largely laudatory (and hence non-source identifying) significance" of the other word in applicant's mark); *see also In re Detroit Athletic Co.,* 903 F.3d 1297, 128 USPQ2d 1047, 1050 (Fed. Cir. 2018) (finding the descriptive and disclaimed portions of applicant's mark "unlikely to change the overall commercial impression engendered by the marks.") (citing *In re Dixie Rests., Inc.*, 105 F.3d 1405, 41 USPQ2d 1531, 1533-34 (Fed. Cir. 1997)).

Applicant's mark also incorporates the entirety of the word portion of Opposer's LUX mark, increasing the similarity between the marks. *See, e.g., Wella Corp. v. Cal. Concept Corp.*, 558 F.2d 1019, 194 USPQ 419, 422 (CCPA 1977) (finding mark CALIFORNIA CONCEPT substantially similar to prior mark CONCEPT); *Coca-Cola Bottling Co. of Memphis, Tenn., Inc. v. Joseph E. Seagram and Sons, Inc.*, 526 F.2d 556, 188 USPQ 105 (CCPA 1975) (applicant's mark BENGAL LANCER likely to cause confusion with BENGAL); *In re Toshiba Med. Sys. Corp.*, 91 USPQ2d 1266, 1271 (TTAB 2009) (finding applicant's mark VANTAGE TITAN confusingly similar to registered mark TITAN). Indeed, consumers may be likely to believe that Applicant's mark is a variant of Opposer's mark, or vice versa, identifying companion products emanating from the same source.

Finally, because Applicant's mark is in standard characters, Applicant is not limited in how it displays its mark. *Squirtco v. Tomy Corp.,* 697 F.2d 1038, 216 USPQ 937, 939 (Fed. Cir. 1983); *In re RSI Sys., LLC,* 88 USPQ2d 1445, 1448 (TTAB 2008); *In re Pollio Dairy Prods. Corp.,* 8 USPQ2d 2012, 2015 (TTAB 1998). Accordingly, we must assume that Applicant could display its mark in a stylization similar to Opposer's stylized mark. *In re Aquitaine Wine USA, LLC,* 126 USPQ2d 1181, 1186 (TTAB 2018) ("Since Registrant's mark is a standard character mark, we must consider that the literal elements of the mark (the words and the letters) may be presented in any font style, size or color, including the same font, size and color as the literal portions of Applicant's mark. This is because the rights associated with a standard character mark reside in the wording per se and not in any particular font style, size, or color.") (citing *Citigroup Inc. v. Capital City Bank Grp. Inc.,* 637 F.3d 1344, 98 USPQ2d 1253, 1259 (Fed. Cir. 2011)).

For all of these reasons, we find that the marks in their entireties are very similar in overall appearance, sound, connotation and commercial impression. The first *DuPont* factor weighs in favor of finding a likelihood of confusion.

2. Similarities of the Goods, Trade Channels and Classes of Consumers

Under the second *DuPont* factor we consider "[t]he similarity or dissimilarity and nature of the goods" and under the third *DuPont* factor we consider "the similarity or dissimilarity of established, likely-to-continue trade channels." *DuPont*, 177 USPQ at 567; *see also Detroit Athletic Co.*, 128 USPQ2d

14

at 1051. We must make our determination based on the goods and trade channels as they are identified in the involved application and registration. *See Stone Lion*, 110 USPQ2d at 1161-62; *Hewlett-Packard Co. v. Packard Press, Inc.*, 281 F.3d 1261, 62 USPQ2d 1001, 1005 (Fed. Cir. 2002); *Octocom Sys., Inc. v. Hous. Comput. Servs., Inc.*, 918 F.2d 937, 16 USPQ2d 1783, 1787-88 (Fed. Cir. 1990).

It is sufficient for a finding of likelihood of confusion if relatedness is established for any item encompassed in the identification of goods in a particular class in the application. *Tuxedo Monopoly, Inc. v. Gen. Mills Fun Grp.*, 648 F.2d 1335, 209 USPQ 986, 988 (CCPA 1981); *Double Coin Holdings Ltd. v. Tru Dev.*, 2019 USPQ2d 377409, *6 (TTAB 2019); *In re Aquamar, Inc.*, 115 USPQ2d 1122, 1126, n.5 (TTAB 2015). "Cosmetic" is defined as "substances that you put on your face or body that are intended to improve your appearance."[8] Accordingly, Applicant's "non-medicated cosmetic soap" is broad enough to encompass Opposer's "soap and body cleansing wash." *In re Hughes Furniture Indus., Inc.*, 114 USPQ2d 1134, 1137 (TTAB 2015) ("Applicant's broadly worded identification of 'furniture' necessarily

---

[8] CAMBRIDGE DICTIONARY OF AMERICAN ENGLISH (last visited March 21, 2022), at https://dictionary.cambridge.org/dictionary/english/cosmetic.

The Board may take judicial notice of dictionary definitions, acronyms, and abbreviations including definitions, acronyms and abbreviations in technical dictionaries, translation dictionaries and online dictionaries which exist in printed format or that have regular fixed editions. *See In re Jimmy Moore LLC*, 119 USPQ2d 1764, 1767-1768 (TTAB 2016); *In re White Jasmine LLC*, 106 USPQ2d 1385, 1392 n.23 (TTAB 2013).

encompasses Registrant's narrowly identified 'residential and commercial furniture.'").

Because there are no trade channel restrictions in Applicant's original, unamended identification of goods, and Applicant's "non-medicated cosmetic soap" encompasses Opposer's "soap and body cleansing wash," we must presume that there is at least some overlap in trade channels and classes of consumers. *See Cai v. Diamond Hong, Inc.*, 901 F.3d 1367, 127 USPQ2d 1797, 1801 (Fed. Cir. 2018); *In re Viterra Inc.,* 671 F.3d 1358, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012) (legally identical goods are presumed to travel in same channels of trade to same class of purchasers); *In re Yawata Iron & Steel Co.*, 403 F.2d 752, 159 USPQ 721, 723 (CCPA 1968) (where there are legally identical goods, the channels of trade and classes of purchasers are considered to be the same).

Accordingly, the second and third *DuPont* factors weigh in favor of finding a likelihood of confusion.

3. Conclusion with Respect to the Original, Unamended Goods

Applicant's standard character mark LUX ENHANCER is very similar in appearance, sound, connotation and commercial impression to Opposer's stylized mark , and Applicant's "non-medicated cosmetic soap" is encompassed within Opposer's "soap and body cleansing wash." These goods are presumed to be sold through the same trade channels to the same classes of consumers. Accordingly, we find that Applicant's mark for the

original, unamended goods is likely to cause confusion with Opposer's stylized

mark  .

C. Likelihood of Confusion with Respect to Applicant's Proposed Amended Goods

This now brings us to a separate analysis under Section 2(d), namely, whether Applicant's proposed amendment to its identification of goods obviates a likelihood of confusion. *Embarcadero Techs.*, 105 USPQ2d at 1838.

Section 18 of the Lanham Act gives the Board the equitable power to "restrict the goods or services identified in an application or registration." 15 U.S.C. § 1068; *see Embarcadero Techs.,* 105 USPQ2d at 1828; *Space Base Inc. v. Stadis Corp.*, 17 USPQ2d 1216, 1220 (TTAB 1990). A party may seek to amend its application by restricting its goods under Section 18, if such restriction would avoid a likelihood of confusion. *See Space Base Inc.*, 17 USPQ2d at 1220. "Any request for relief under Section 18 of the Act, whether by way of an affirmative pleading or by motion, must include at least a general statement of the manner in which the goods or services of the pleaded registration or the involved application should be restricted." *Id.*

As noted above, Applicant filed, concurrently with its answer and noted therein, a motion to amend the goods in its application as follows (deletions shown in strikethrough; additions shown in bold):

> Class 3: ~~hair bleach; hair bleaching preparations;~~ hair care preparations; ~~hair color; hair gels; hair styling preparations; hair conditioner; hair mousses; hair pomades; hair shampoo; hair spray; hair gel and hair mousse; hair styling spray; non-medicated cosmetic soap;~~

> ~~non-medicated preparations all for the care of hair and scalp; styling mousse,~~ **excluding soap and body cleaning wash, and distributed through and used by hair stylists and other hair care professionals**

The proposed amendment deletes the goods (non-medicated cosmetic soap) as to which we found a likelihood of confusion with respect to the original unamended identification, and narrows Applicant's "hair care preparations" to a particular trade channel. There is no evidence in the record to support the relatedness of "hair care preparations" and Opposer's "soap and body cleansing wash," nor is there evidence that the normal channels of trade for Opposer's "soap and body cleansing wash" would include distribution through "hair stylists and other hair care professionals."

Accordingly, although the parties' marks are quite similar, we find that the proposed amendment would obviate a likelihood of confusion between the marks.

In view thereof, Applicant's motion to amend its identification of goods is **granted to the extent modified herein**.

D. Amendment Accepted As Modified

An applicant may not amend an identification of goods to add or substitute a term that is not logically included within the scope of the original identification, or to add exclusionary language that falls outside the scope of the original identification, or that makes the amended goods or services otherwise qualitatively different from the goods and services as originally identified. TRADEMARK MANUAL OF EXAMINING PROCEDURE (TMEP)

18

§§ 1402.06(a),[9] 1402.07 (July 2021). The goods remaining in the identification following the proposed amendment are "hair care preparations." The proposed language "excluding soap and body cleaning wash" falls outside the scope of "hair care preparations." Accordingly, and as permitted by Section 18, we amend Applicant's identification of goods to read as follows:

> Hair care preparations distributed through and used by hair stylists and other hair care professionals.

**Decision**

The opposition is dismissed, the identification of goods in the application is amended, and the involved application will proceed as amended.

---

[9] TMEP § 1402.06(a) provides the following guidance:
*Example* - If the applicant initially identifies the goods as "hats" the applicant may not amend its identification to "hats, excluding handbags" because the exclusionary language "excluding handbags" falls outside the scope of "hats."