This Opinion is a
Precedent of the TTAB

Mailed: January 26, 2015

UNITED STATES PATENT AND TRADEMARK OFFICE

____

Trademark Trial and Appeal Board

____

*In re Thor Tech, Inc.*

____

Serial No. 85667188

____

B. Joseph Schaeff of Dinsmore & Shohl LLP for Thor Tech, Inc.

Bridgett G. Smith, Trademark Examining Attorney, Law Office 115 (John Lincoski, Managing Attorney).

____

Before Bucher, Bergsman and Adlin, Administrative Trademark Judges.

Opinion by Bergsman, Administrative Trademark Judge:

Thor Tech, Inc. ("Applicant") filed an intent-to-use application to register the mark TERRAIN, in standard character form, for "recreational vehicles, namely, towable trailers," in Class 12. The Trademark Examining Attorney refused to register applicant's mark under Section 2(d) of the Trademark Act of 1946, 15 U.S.C. § 1052(d), on the ground that applicant's mark so resembles the mark TERRAIN, in standard character form, for "motor land vehicles, namely, trucks," in Class 12, as to be likely to cause confusion.[1] We reverse.

____

[1] Registration No. 3707074, issued on November 3, 2009. The registrant is General Motors LLC.

Our determination under Section 2(d) is based upon an analysis of all of the probative facts in evidence that are relevant to the factors bearing on the issue of likelihood of confusion. *In re E. I. du Pont de Nemours & Co.,* 476 F.2d 1357, 177 USPQ 563, 567 (CCPA 1973). *See also, In re Majestic Distilling Co.,* 315 F.3d 1311, 65 USPQ2d 1201, 1203 (Fed. Cir. 2003). In any likelihood of confusion analysis, two key considerations are the similarities between the marks and the similarities between the goods. *See Federated Foods, Inc. v. Fort Howard Paper Co.,* 544 F.2d 1098, 192 USPQ 24, 29 (CCPA 1976) ("The fundamental inquiry mandated by § 2(d) goes to the cumulative effect of differences in the essential characteristics of the goods and differences in the marks"). These and other *du Pont* factors relevant in the proceeding now before us have been considered.

A. The similarity or dissimilarity of the marks in their entireties in terms of appearance, sound, connotation and commercial impression.

The marks are identical. However, the identity of the marks alone is not sufficient to establish likelihood of confusion in the absence of probative evidence that the goods are related. If that were the case, then the Registrant would have rights in gross, and that is against the principles of trademark law. "In every case turning on likelihood of confusion, it is the duty of the examiner, the board and this court to find, upon consideration of *all* the evidence, whether or not confusion appears likely." *Electronic Design & Sales Inc. v. Electronic Data Systems Corp.,* 954 F.2d 713, 21 USPQ2d 1388, 1392 (Fed. Cir. 1992), *quoting In re E. I. du Pont de Nemours & Co.,* 177 USPQ at 568.

B.    The similarity or dissimilarity and nature of the goods.

Applicant is seeking to register its mark for "recreational vehicles, namely, towable trailers." A "recreational vehicle" is defined as "a large vehicle that often has a bathroom, kitchen, and beds for use during travel and camping."[2]

According to **WOODALL'S RV BUYER'S GUIDE** (1998), "[t]owable RVs are just that – units that are transported by hitching them to truck, van or car. All towable RVs offer the benefit of freeing the tow vehicle for other uses after the unit has been moved and set-up at its campsite."[3]

> Probably the single most-popular class of towable RV is the Travel Trailer. Spanning 13 to 35 feet long, travel trailers are designed to be towed by cars, vans, and pickup trucks with only the addition of a frame or bumper mounted hitch. Single axles are common, but dual and even triple axles may be found on larger units to help carry the load.
>
> Most travel trailers are equipped with electric and water capacities on board as well as toilet facilities. Self-contained (independent of hookups) operation is possible with most travel trailers, and all may be connected to facilities at RV parks and campgrounds for extended stays.[4]

---

[2] MERRIAM-WEBSTER (merriam-webster.com). The Board may take judicial notice of dictionary definitions, *Univ. of Notre Dame du Lac v. J.C. Gourmet Food Imp. Co.*, 213 USPQ 594 (TTAB 1982), *aff'd*, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983), including online dictionaries that exist in printed format or have regular fixed editions. *In re Red Bull GmbH*, 78 USPQ2d 1375, 1377 (TTAB 2006). We take judicial notice of the definition of recreational vehicle submitted with the Examining Attorney's brief.

[3] June 17, 2013 response to Office Action.

[4] *Id.*

The silhouette of a towable travel trailer presented in **WOODALL'S RV BUYER'S GUIDE** is displayed below.[5]



The goods in the cited registration are "trucks." A "truck" is defined as "any of various heavy motor vehicles designed for carrying or pulling loads."[6]

The Trademark Examining Attorney submitted copies of seven third-party registrations of marks for goods including both "trucks" and "trailers" as evidence that trucks and trailers may emanate from the same source.[7] However, five of the seven registrations list trailers that are not recreational vehicle towable trailers. For example, the following third-party registrations have no probative value in this case because the specially-designed trailers listed in the respective descriptions of goods are so different from recreational vehicles:

1. Registration No. 3406922 for the mark CHALLENGER and design for trucks and garbage hauling trailers;

2. Registration No. 4006290 for the mark A ALTEC GREEN FLEET and design for, *inter alia*, trucks, namely, mobile hydraulic equipment for utility industries to

---

[5] *Id.*

[6] **THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE** (4th ed. 2000) (Trademark Examining Attorney's Brief, p. 6 (unnumbered)).

[7] November 1, 2012 Office Action.

support personnel at high altitudes, cargo trailers used to transport poles, and trailers with hotline insulator washers; and

　　3. Registration No. 3302346 for the mark **FETERL** for "vehicles, namely, field service lubrication trailers and trucks."

Arguably, reading the following identifications of goods broadly, as we must,[8] the following two third-party, use-based registrations serve to suggest that trucks, conversion kits, trailer hitches and trailers may emanate from the same source:

| Mark | Reg. No. | Goods[9] |
|---|---|---|
| **HABITAT** | 3821672 | for a long list of parts for automobile conversions; trucks; recreational vehicles, namely, towable trailers |
| **EZ EZEGIDE and design** | 4122881 | for trailer couplings; trailer hitches; trailers; trucks |

In rebuttal to the two probative registrations the Examining Attorney placed in the record, Applicant submitted copies of fifty (50) sets of third-party registrations

---

[8] We note that Applicant impermissibly resorted to extrinsic evidence to support its argument that these marks are actually used for (i) a conversion kit where a hard top replacement for a Jeep Wrangler folds into a tent, and (ii) tractor trailers designed for heavy construction, respectively. A registration certificate operates as "prima facie evidence of the validity of the registered mark and * * * of the [registrant's] exclusive right to use the registered mark in commerce on or in connection with the goods * * * specified in the [registration] certificate, subject to any conditions or limitations stated in the certificate." Trademark Act §§ 7(b) and 33(a), 15 U.S.C. §§ 1057(b) and 1115(a). Therefore, we evaluate the usages encompassed by a registration's statement of goods and cannot countenance an applicant's attempt to show that a registrant's actual usage is narrower than the statement of goods in the registration. *See generally Stone Lion Capital Partners v. Lion Capital LLP*, 746 F.3d 1317, 110 USPQ2d 1157, 1162 (Fed. Cir. 2014); *In re Dixie Rests., Inc.*, 105 F.3d 1405, 41 USPQ2d 1531, 1534-1535 (Fed. Cir. 1997); *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 55 USPQ2d 1842, 1846 (Fed. Cir. 2000).

[9] We have not included the entire description of goods for each registration. We have listed only the relevant goods in these registrations that arguably encompass the goods at issue in the involved application and cited registration.

for the same or similar marks registered for automobiles, trucks or sport utility vehicles on the one hand and recreational vehicles, travel trailers, and/or motor homes on the other, which are owned by different entities.[10] Significantly, seven sets of third-party registrations (shown below) appear to be owned, respectively, by the Registrant of the cited registration and Applicant or one of Applicant's related companies. Further, the registrations listed below are illustrative of what is shown by the other sets of third-party registrations (*i.e.*, that the same or very similar marks have been registered for trucks, SUVs or automobiles and recreational vehicles, travel trailers or motor homes).

| Land Vehicles | Mark | Recreational trailers |
|---|---|---|
| trucks[11] | **SILVERADO** | recreational vehicles, namely, towable trailers[12] |
| automobiles, trucks, sport utility vehicles and vans[13] | **COLORADO** | travel trailers and fifth wheel trailers[14] |
| sport utility vehicles[15] | **TRAILBLAZER** | travel trailers, fifth wheel trailers and camper trailers[16] |
| sport utility vehicles [17] | **DENALI** | travel trailers and fifth wheel trailers[18] |

[10] June 17, 2013 response to Office Action.

[11] Registration No. 1039220 owned by General Motors.

[12] Registration No. 4080540 owned by Heartland Recreational Vehicles. LLC, of Elkhart, IN.

[13] Registration No. 2813324 owned by General Motors.

[14] Registration No. 2765394 owned by Thor Tech, Inc., applicant herein.

[15] Registration No. 2257873 owned by General Motors.

[16] Registration No. 2629101 owned by Thor Tech, Inc., applicant herein.

[17] Registration No. 2224539 owned by General Motors.

[18] Registration No. 2968796 owned by Thor Tech, Inc., applicant herein.

| Land Vehicles | Mark | Recreational trailers |
|---|---|---|
| automobiles, trucks, sport utility vehicles, and vans[19] | **AVALANCHE** | fifth wheel trailers[20] |
| land motor vehicles, namely automobiles and structural parts therefore[21] | **STRATUS** | recreational vehicles, namely, travel trailers[22] |
| motor vehicles, namely trucks, engines therefor, and structural parts thereof[23] | **TAHOE** | recreational vehicles, namely travel trailers and fifth wheels [24] |

The existence of almost fifty pairs of substantially identical marks for land motor vehicles and for towable recreational vehicle trailers on the federal Trademark Register suggests to us that businesses in these two industries believe that their respective goods are distinct enough that confusion between even identical marks is unlikely. We have previously relied on similar evidence as weighing against confusion. In *Keebler Company v. Associated Biscuits Limited*, 207 USPQ 1034 (TTAB 1980), we said:

> … In this sense, the registrations tend to define fields of use and, conversely, the boundaries of use and protection surrounding the marks and marks comprising the same word … for their various products. The mutual respect and restraint exhibited toward each other by the owners of the plethora of marks, evidenced by their coexistence on the Register, are akin to the opinion manifested by knowledgeable businessmen … .

---

[19] Registration No. 2866966 owned by General Motors.

[20] Registration No. 3871181 owned by Thor Tech, Inc., applicant herein.

[21] Registration No. 2000194 owned by DaimlerChrysler.

[22] Registration No. 2594862 owned by Bison of Elkhart, IN.

[23] Registration No. 1880529 owned by General Motors.

[24] Registration No. 2282368 owned by MVP RV, Inc.

*Id.* at 1038. While *Keebler* involved numerous third-party registrations incorporating the word "Club," the Board noted that "[t]he pattern of registrations does, however, exemplify long-standing and extensive practice within the Patent and Trademark Office and, necessarily, equally long-standing beliefs … of business people that the uses of those marks would be feasible and helpful in their businesses." *Id.* The inference that we draw from the "pattern of registrations" is applicable in this case.

The Examining Attorney argues, however, that because a towable trailer is towed by a car or truck, "there is an overlap in the nature of the goods."[25] "Evidence of complementary use may be given more or less weight depending on the nature of the goods." *In re Martin's Famous Pastry Shoppe, Inc.* 748 F.2d 1565, 223 USPQ 1289, 1290 (Fed. Cir. 1984). While the complementary nature of goods can support a conclusion that they are related for likelihood of confusion purposes, the record here does not support such a finding.

Under the circumstances presented in this *ex parte* appeal, we find that Applicant's evidence of dozens of third-party registrations for the same or very similar marks owned by different entities for vehicles and recreational vehicle trailers rebuts the relevant, two third-party registrations made of record by the Trademark Examining Attorney.[26] We cannot conclude on this evidentiary record

---

[25] Trademark Examining Attorney's Brief, pp. 5-6 (unnumbered).

[26] Further, the record before us indicates that the nature of the goods is different. Unlike trucks, recreational trailers do not have engines and are designed for use as a temporary place to live while traveling or camping, typically coming equipped with beds and toilet facilities. *See* **WOODALL'S RV BUYER'S GUIDE,** attached to the June 17, 2013 response to Office Action.

that consumers would assume a common source for the goods despite their complementary nature. To the contrary, the third-party registrations of record suggest that consumers are aware that they are offered by different companies under the same or similar marks.

Accordingly, we find that the similarity of the goods factor weighs against likelihood of confusion.

C.   Established, likely-to-continue channels of trade.

To show that trucks and "recreational vehicles, namely, towable trailers" move in the same channels of trade, the Trademark Examining Attorney submitted reprints from Internet websites of companies purportedly selling both products. As we noted with the third-party registration evidence, much of the Internet evidence was not focused on recreational vehicle trailers, rather it included trailers of many other types or of an unspecified nature. For example, none of the Internet websites attached to the November 1, 2012 Office Action included recreational vehicle trailers. Three of the nine websites that the Trademark Examining Attorney included in her December 17, 2012 Office Action show the same company selling trucks and recreational vehicle trailers:[27]

> 1.   Moore's Auto (mooresauto.com) located in Towanda, Pennsylvania advertises the sale of automobiles and recreational vehicles;

---

[27] Sparta Chevrolet & Trailer Sales (spartachevytrailers.com) located in an unidentified part of West Michigan advertises "new and used vehicles as well as horse trailers." Because Sparta Chevrolet & Trailer Sales does not advertise the sale of recreational vehicles in general and towable trailers in particular, this website evidence has limited probative value.

    2.      Oak Lake RV Sales & Service (oaklakerv.com) located in Kerrick, Minnesota advertises the sale of "new and used motor homes, 5th wheels, travel trailers, truck campers & folding campers, pontoons, boats, and other watercrafts, cars, SUVs, trucks, snowmobiles and more"; and

    3.      Haylett Auto & RV Home (haylettautoandrv.com) located in Coldwater, Michigan advertises the sale of "a new camper, trailer, or automobile." (Although the Haylett Auto & RV Home does not reference truck sales, we will assume arguendo that the company would sell any previously-owned truck that it took back in a trade.).

These companies are not manufacturers. At best, this evidence shows that two small retailers who sell a wide variety of vehicles also sell used trucks and recreational vehicle towable trailers and another such retailer sells automobiles (and presumably trucks) and recreational vehicles. While trucks and recreational towable trailers may occasionally be sold by the same retailers, we cannot overlook the facts that the products are, at least on this record, noncompetitive, differ completely in utility, have nothing in common with respect to their essential characteristics or sales appeal, and, as discussed below, are expensive. Accordingly, we cannot find on this record that the channels of trade and circumstances under which trucks and recreational vehicle towable trailers are sold are sufficiently similar so as to be likely to give rise to the mistaken belief that the trucks and trailers emanate from a single source when sold under the same mark.

In view thereof, we find that the channels of trade factor does not weigh in favor of a likelihood of confusion.

D. Degree of consumer care.

The nature of the products and the conditions of sale can be influential factors in determining the degree of consumer care. While neither applicant nor the Trademark Examining Attorney presented any evidence regarding the degree of consumer care, applicant did present evidence that several of the trucks bearing the marks in the table above are expensive items. Registrant's TERRAIN is a sport utility vehicle that has a manufacturer's suggested retail price of $26,235.[28] Chevrolet SILVERADO pick-up trucks have a manufacturer's suggested retail price ranging from $23,590 to $40,885 depending on the model.[29] A 2012 Chevrolet COLORADO pick-up truck had a manufacturer's suggested retail price of $17,475.[30] There is also evidence in the record that recreational vehicle towable trailers are expensive as well. The Moore's Auto website (mooresauto.com) advertises for sale a 2010 Jayco Jay Flight towable trailer for $7,995, and a 2005 Jayco Jay Flight towable trailer for $13,995.[31] Haylett Auto & RV advertise the sale of a 2012 Forest River Rockwood Signature towable trailer for $23,800.[32] We infer from this evidence that purchasers of both types of goods would exercise a high degree of care in making their purchasing decisions. Trucks and recreational vehicle towable trailers are not everyday purchases. They are special purchases. A consumer can be expected to pay particular attention to such purchases, and indeed would likely

---

[28] June 17, 2013 response to Office Action.

[29] *Id.*

[30] *Id.*

[31] December 17, 2012 Office Action.

[32] December 17, 2012 Office Action.

make a careful personal examination of the item before buying. These types of products, at these prices, are not the kinds of products which we think reasonably prudent purchasers would buy, or without researching the product to some degree. Rather, these are items that will be purchased with care and deliberation. *See Tiffany & Co. v. Classic Motor Carriages Inc.*, 10 USPQ2d 1835, 1841 (TTAB 1989) (automobiles would be purchased only upon careful consideration). In making purchasing decisions regarding expensive products such as these, "the reasonably prudent person standard is elevated to the standard of the 'discriminating purchaser.'" *Weiss Associates, Inc. v. HRL Associates, Inc.,* 902 F.2d 1546, 14 USPQ2d 1840, 1841 (Fed. Cir. 1990).

We find that the degree of consumer care weighs against a likelihood of confusion.

E.    Balancing the factors.

Despite the fact that the marks are identical, the difference in the nature of the goods and their channels of trade and the high degree of consumer care likely to be exercised by the relevant consumers supports the conclusion that applicant's mark TERRAIN for "recreational vehicles, namely, towable trailers" is not likely to cause confusion with the mark TERRAIN for "motor land vehicles, namely, trucks."

**Decision***:* The refusal to register is reversed.