This Opinion is a
Precedent of the TTAB

Hearing:
January 15, 2015

Mailed:
October 7, 2015

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

Trademark Trial and Appeal Board
_____

*In re i.am.symbolic, llc*
_____

Serial Nos. 85044494
_____

Jill M. Pietrini of Sheppard Mullin Richter & Hampton,
    for i.am.symbolic, llc.

Timothy J. Finnegan, Trademark Examining Attorney, Law Office 104,
    Chris Doninger, Managing Attorney.
_____

Before Quinn, Taylor, and Shaw,
    Administrative Trademark Judges.

Opinion by Quinn, Administrative Trademark Judge:

Before the Board is an *ex parte* appeal involving application Serial No. 85044494 to register the mark I AM in standard characters. The application was filed on May 21, 2010, and alleged a *bona fide* intention to use the mark in commerce under Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b). The application contains language in the identification of goods stating that the goods are "associated with

William Adams, professionally known as 'will.i.am.'"[1] Specifically, the goods identified in the application are as follows (emphasis added):

> Cosmetics; artificial eyelashes; body powder; incense; non-medicated lip balm; non-medicated hair care preparations; non-medicated nail care preparations; non-medicated skin care preparations; makeup remover; massage oils; essential oils for personal use; shaving creams and gels and depilatory creams and gels; shower and bath gels, bath crystals, milks, oils, bubble bath, powders and salts; soaps and detergents; sun screen and sun tanning preparations; toothpaste and mouthwash, **all associated with William Adams, professionally known as "will.i.am"** (in International Class 3).

The Trademark Examining Attorney refused registration on the ground of likelihood of confusion with a previously registered mark under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d). The crux of Applicant's position centers on the purported dissimilarity of its goods and the goods of Registrant due to the specific language highlighted above in Applicant's identification of goods (namely, the language "associated with William Adams, professionally known as 'will.i.am'"). After a final refusal issued, Applicant appealed. Applicant's counsel and the Examining Attorney filed briefs, and both appeared at an oral hearing. We affirm the refusal of registration.

## *Background*

William Adams is an American musician known by his stage name "will.i.am" as the front man of the music group The Black Eyed Peas. The evidence shows that

---

[1] The current owner of the application is i.am.symbolic, llc. After the appeal was filed the application was assigned by William Adams to i.am.symblolic, llc in a document executed on July 19, 2013; the assignment document was recorded on July 25, 2013 in the Assignment Branch records of the Office at reel 5078, frame 0946.

Mr. Adams became well-known as a member of that highly successful group, and that he has embarked in expanding his career beyond music, to acting, fashion and political advocacy. Applicant, by way of assignment from Mr. Adams, owns the following registrations: WILL.I.AM (in standard characters) for "series of pre-recorded phonograph records, CDs and audio cassettes featuring music; series of pre-recorded video tapes and DVDs featuring music videos and musical performances" in International Class 9;[2] and for "entertainment services, namely, live musical performances by a male artist; and fashion designer" in International Class 41;[3] and I AM (typed drawing) for "clothing, namely, hats, caps, socks, shirts, t-shirts, sweatshirts, tank tops, shorts, pants, sweatpants, jeans, swimwear, swimsuits, beachwear and footwear, namely, shoes, athletic footwear, boots, clogs, sneakers and sandals" in International Class 25.[4] As discussed further below, Applicant contends that its I AM mark now sought to be registered is a natural extension of its registered WILL.I.AM and I AM marks, and "conveys the synthesis of [Mr. Adams'] own artistry, expression, and activism." (Response, March 14, 2011).

## *Discussion*

The Trademark Examining Attorney refused registration under Section 2(d) on the ground that Applicant's mark I AM (in standard characters), when applied to

---

[2] Registration No. 3678106, issued September 1, 2009 on the Supplemental Register.

[3] Registration No. 3707981, issued November 10, 2009.

[4] Registration No. 2433688, issued March 6, 2001; renewed. Prior to November 2, 2003, "standard character" drawings were known as "typed" drawings. A typed mark is the legal equivalent of a standard character mark. TMEP § 807.03(i) (July 2015).

Applicant's goods (including cosmetics, and beauty and personal care products, such as skin care preparations, essential oils and soap), so resembles the previously registered mark I AM (in typed form) for "perfume" in International Class 3,[5] as to be likely to cause confusion.

Applicant contends that there is no likelihood of confusion because its mark identifies Applicant's founder "will.i.am"; Applicant's goods are exclusively associated with Applicant's founder "will.i.am"; the goods under the respective marks are marketed differently; and the cited mark is not famous.

Applicant filed excerpts of Registrant's website, and copies of Applicant's registrations. The Examining Attorney submitted third-party registrations and excerpts of third-party websites, and a dictionary definition of the word "perfume."

Our determination under Section 2(d) is based on an analysis of all of the facts in evidence that are relevant to the factors bearing on the likelihood of confusion issue. *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563 (CCPA 1973). "In any likelihood of confusion analysis, two key considerations are the similarities between the marks and the similarities between the goods." *In re SL&E Training Stable, Inc.*, 88 USPQ2d 1216, 1217 (TTAB 2008). *See also Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 192 USPQ 24, 29 (CCPA 1976) ("The fundamental inquiry mandated by §2(d) goes to the cumulative effect of differences in the essential characteristics of the goods and differences in the marks.").

---

[5] Registration No. 2045626, issued March 18, 1997; renewed. The registration is owned by Danica Siegel.

In determining the issue of likelihood of confusion, we are guided by the following legal principles that pertain to the first and second *du Pont* factors. With respect to the first *du Pont* factor, we must compare the marks in their entireties as to appearance, sound, connotation and commercial impression to determine the similarity or dissimilarity between them. *Palm Bay Imports, Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 73 USPQ2d 1689, 1691 (Fed. Cir. 2005) (quoting *In re E. I. du Pont de Nemours & Co.*, 177 USPQ at 567). "The proper test is not a side-by-side comparison of the marks, but instead 'whether the marks are sufficiently similar in terms of their commercial impression' such that persons who encounter the marks would be likely to assume a connection between the parties." *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 101 USPQ2d 1713, 1721 (Fed. Cir. 2012) (citation omitted). The focus is on the recollection of the average purchaser, who normally retains a general rather than a specific impression of trademarks. *See Inter IKEA Sys. B.V. v. Akea, LLC*, 110 USPQ2d 1734, 1740 (TTAB 2014); *Sealed Air Corp. v. Scott Paper Co.*, 190 USPQ 106 (TTAB 1975).

As to the second *du Pont* factor, when analyzing the similarity of the goods, "it is not necessary that the products of the parties be similar or even competitive to support a finding of likelihood of confusion." *Coach Services Inc. v. Triumph Learning LLC*, 101 USPQ2d at 1722, citing *7-Eleven Inc. v. Wechsler*, 83 USPQ2d 1715, 1724 (TTAB 2007). Instead, likelihood of confusion can be found "if the respective products are related in some manner and/or if the circumstances

surrounding their marketing are such that they could give rise to the mistaken belief that they emanate from the same source." *Id.* The issue is not whether purchasers would confuse the goods, but rather whether there is a likelihood of confusion as to the source of the goods. *L'Oreal S.A. v. Marcon*, 102 USPQ2d 1434, 1439 (TTAB 2012); *In re Rexel Inc.*, 223 USPQ 830 (TTAB 1984). Likelihood of confusion must be found if there is likely to be confusion with respect to any item in a class that comes within the identification of goods in the application and cited registration. *See Tuxedo Monopoly, Inc. v. General Mills Fun Group*, 648 F.2d 1335, 209 USPQ 986, 988 (CCPA 1981); *Apple Computer v. TVNET.Net, Inc.*, 90 USPQ2d 1393, 1398 (TTAB 2007).

In making our determination regarding the relatedness of the goods, we must look to the goods as identified in the application and the cited registration. *See Octocom Sys., Inc. v. Houston Computers Servs., Inc.*, 918 F.2d 937, 16 USPQ2d 1783, 1787 (Fed. Cir. 1990); *In re Giovanni Food Co.*, 97 USPQ2d 1990, 1991 (TTAB 2011).

### *"Associated With" Language in Identification of Goods*

We first address Applicant's main argument against the refusal, that is, that the language "associated with William Adams, professionally known as 'will.i.am'" in its identification of goods ensures that consumers are unlikely to be confused as to the source of the goods. Applicant contends that its goods represent a creative extension of Mr. Adams' growing commercial interests beyond music. However, we view the language "associated with William Adams, professionally known as 'will.i.am'" in

Applicant's identification of goods as merely highlighting an association with Applicant's presumed principal, Mr. Adams.[6] Contrary to Applicant's assertion, we do not see the language as imposing a meaningful limitation on Applicant's goods in any fashion, most especially with respect to either trade channels or class of purchasers. The language does not, in any meaningful way, alter the nature of the goods identified; nor does it represent that the goods will be marketed in any particular, limited way, through any particular, limited trade channels, or to any particular class of customers. It does not even represent that Mr. Adams will be named, or otherwise identified, in the promotion of the goods. The language "associated with William Adams, professionally known as 'will.i.am'" is precatory language, and not binding on consumers when they encounter Applicant's mark. *Cf. M2 Software Inc. v. M2 Communications Inc.*, 450 F.3d 1378, 78 USPQ2d 1944 (Fed. Cir. 2006) (based on restrictions to specific industries in both of the identifications of goods in Opposer's registration and Applicant's application, the goods are unrelated and travel in different trade channels to different purchasers). Purchasers are unlikely to know of the assertion in a registration issued to Applicant that Applicant's goods are limited to those associated with Mr. Adams.

Applicant also argues that its mark will be perceived as identifying Mr. Adams, and that this perception will, in some way, affect the marketing of the goods and the customers to whom they are directed. It should be noted, however, that Applicant is seeking to register the mark I AM, not WILL.I.AM. The record falls short of

---

[6] As indicated earlier, Mr. Adams transferred his rights in the applied-for mark and ownership of the application to Applicant. In the appeal brief, Mr. Adams is referred to as Applicant's "founder and manager." (32 TTABVUE 4).

7

establishing that Mr. Adams is widely known by "i.am" (as opposed to "will.i.am"),
or that "i.am" and "will.i.am" are used interchangeably by either Mr. Adams or the
public; Applicant's registration for the mark I AM (which it acquired by assignment)
does not persuade us to the contrary. In this connection, we note that Applicant's
registration for the mark WILL.I.AM includes a statement that "[t]he name shown
in the mark identifies a living individual whose consent to register is of record."
Although the lack of such a statement is not proof that a mark does not identify a
particular living individual, we note Applicant's registration for the mark I AM for
clothing does not include such a statement.

Applicant is seeking to register the mark I AM (no periods), and not WILL.I.AM.
Even if we were to accept Applicant's contention that Mr. Adams is known by "i.am"
and that this brand has gained notoriety, the statute still "protects the registrant
and senior user from adverse commercial impact due to use of a similar mark by a
newcomer." *In re Shell Oil Co.*, 992 F.2d 1204, 26 USPQ2d 1687, 1690 (Fed. Cir.
1993). As the Federal Circuit stated:

> The term "reverse confusion" has been used to describe
> the situation where a significantly larger or prominent
> newcomer "saturates the market" with a trademark that
> is confusingly similar to that of a smaller, senior
> registrant for related goods or services. *Sands, Taylor &
> Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 957 & n.12,
> 24 USPQ2d 1001, 1010 & n.12 (7th Cir. 1992), *cert. denied*,
> 61 U.S.L.W. 3621 (U.S. Apr. 19, 1993) (No. 92-1400). The
> junior user does not seek to benefit from the goodwill of
> the senior user; however, the senior user may experience
> diminution or even loss of its mark's identity and goodwill
> due to extensive use of a confusingly similar mark by the
> junior user. *Banff, Ltd. v. Federated Department Stores,
> Inc.*, 841 F.2d 486, 490, 6 USPQ2d 1187, 1191 (2d Cir.

1988); *Ameritech, Inc. v. American Information Technologies Corp.*, 811 F.2d 960, 966, 1 USPQ2d 1861, 1866 (6th Cir. 1987).

The avoidance of confusion between users of disparate size is not a new concept; however, the weighing of the relevant factors must take into account the confusion that may flow from extensive promotion of a similar or identical mark by a junior user. *See DeCosta v. Viacom International Inc.*, 981 F.2d 602, 607-10, 25 USPQ2d 1187, 1191-93 (1st Cir. 1992).

The language in the identification of goods simply is not a reasonable basis to assume that purchasers would be able to distinguish the source of such goods from those emanating from the prior Registrant. As we view it, the language essentially is a distinction without a difference for purposes of our likelihood of confusion analysis.

We now turn to consideration of the relevant *du Pont* factors. We state, at the outset, that we have carefully considered all of the evidence made of record pertaining to the issue of likelihood of confusion, as well as all of the arguments related thereto, including any evidence and arguments not specifically discussed in this opinion.

### Similarity of the Marks

With respect to the first *du Pont* factor, the marks are identical in appearance, both being I AM with no stylization. They both consist of the same two common words, and would therefore be pronounced in identical manner. There is also no question that typical customers know the meaning of the terminology I AM; accordingly, both marks would immediately be perceived to have the same literal meaning.

As to commercial impression, Applicant contends that the marks are "vastly different." (Brief, p. 11; 32 TTABVUE 14). Making reference to Registrant's website, Applicant points out that Registrant quotes the philosopher Descartes: "I think, therefore I am." Registrant's website shows that its perfume is marketed under a variety of "I AM [blank]" marks, such as I AM WILD, I AM LOVE, I AM HOT, and I AM MAGIC, among others. (5 TTABVUE 5). Applicant states that Registrant's fragrances are marketed as "imbued with the power of positive thought" and are used in the "art of aromatherapy." According to Applicant, the use of "I Am" by Registrant refers to a type of philosophy. This is to be contrasted with Applicant's mark:

> Applicant has been known worldwide as WILL.I.AM for more than 23 years, long before Registrant began use of the Cited Mark. Applicant's cosmetics, beauty and personal care products to be sold under I AM are intended to promote Applicant's fame as a music artist, fashion designer, political activist and entrepreneur, because he is and has been uniquely referred to as WILL.I.AM and has already used I AM for so many years.

> Because Applicant's use of I AM refers to Applicant and his activities in the music industry, it cannot be said that the connotation and commercial impression between Applicant's I AM mark and the Cited Mark is the same. Applicant's use of I AM is to identify a certain individual and his various endeavors, not to denote a type of philosophy.

(Brief, p. 11, 32 TTABVUE 14).

Regardless of how Applicant or Registrant currently intends to promote its mark, it is indisputable that the two marks at issue are literally identical, carry the same meaning, and have the potential to be used (at least in terms of their

10

grammatical meaning) in exactly the same manner. Thus, although we acknowledge Applicant's intentions in this regard and Registrant's marketing surrounding the registered mark, we find that the marks, when used in connection with the goods as set forth in the identifications of goods, would be perceived similarly. In considering the similarity between the marks, we must compare Applicant's mark with the cited mark *as shown in the registration certificate. See B.V.D. Licensing Corp. v. Rodriguez,* 83 USPQ2d 1500, 1508 (TTAB 2007); *Jockey Int'l. Inc. v. Mallory & Church Corp.,* 25 USPQ2d 1233, 1236 (TTAB 1992); *Blue Cross and Blue Shield Assoc. v. Harvard Community Health Plan Inc.,* 17 USPQ2d 1075, 1077 (TTAB 1990). The cited registration is for I AM, not I AM combined with some other word. Because the marks are identical, we conclude that they are likely to engender the same overall commercial impression. Accordingly, the identity between the marks is a *du Pont* factor that weighs heavily in favor of a finding of likelihood of confusion.

### *Relatedness of the Goods and Channels of Trade*

In considering the second *du Pont* factor focusing on the similarity of the goods, we especially note that where identical marks are involved, as is the case here, the degree of similarity between the goods that is required to support a finding of likelihood of confusion declines. *In re Shell Oil Co.*, 26 USPQ2d at 1688-89 ("even when the goods or services are not competitive or intrinsically related, the use of identical marks can lead to the assumption that there is a common source"); *Time Warner Entertainment Co. v. Jones*, 65 USPQ2d 1650 (TTAB 2002); and *In re Opus One Inc.*, 60 USPQ2d 1812 (TTAB 2001). It is only necessary that there be a "viable

relationship between the goods" to support a finding of likelihood of confusion. *In re Thor Tech Inc.*, 90 USPQ2d 1634, 1636 (TTAB 2009).

Applicant asserts that "[t]he crucial factor in this inquiry is Applicant's intent to use I AM not only for the cosmetics, beauty and personal care products in Class 3, but also for entertainment services and merchandise such as clothing, CDs, DVDs, electronics, keychains, bags, bath and beauty products, etc." (Brief, p. 12, 32 TTABVUE 15). Applicant further argues:

> Applicant's promotion and use of I AM negates and will continue to negate any possibility of confusion by consumers, because Applicant associates I AM, like WILL.I.AM, with Applicant. By way of example, Applicant's launch of [its] clothing line under the I AM mark was widely publicized as a creative endeavor by Applicant. Applicant also leveraged his membership in The Black Eyed Peas by publicizing his I AM clothing line on The Black Eyed Peas website. Applicant's website at www.iamclothing.net consistently associates I AM with WILL.I.AM. Applicant intends to promote his I AM mark for cosmetics, beauty and personal care products in Class 3 in the same manner and style as his promotional efforts for his clothing and other merchandise, which alleviates any possibility that his I AM mark would be seen as emanating from the same source as the Cited Mark.

*Id.* Further, Applicant contends that Registrant's products are marketed through its own website (www.iamdanica.com) and at spas and fine boutiques.

The Examining Attorney's evidence bearing on the relatedness of the goods comprises copies of numerous use-based third-party registrations which individually cover, under a single mark, both types of goods involved herein, namely cosmetics, beauty and personal care products on the one hand, and perfume on the other. Some examples are: Reg. No. 3122160 for ; Reg. No. 3183324 for

; Reg. No. 3288122 for **Overtired & Cranky**; Reg. No. 3295488 for ALWAYS INSPIRING MORE; and Reg. No. 3334877 for BITCHIN'. "Third-party registrations which cover a number of differing goods and/or services, and which are based on use in commerce, although not evidence that the marks shown therein are in use on a commercial scale or that the public is familiar with them, may nevertheless have some probative value to the extent that they may serve to suggest that such goods or services are of a type which may emanate from a single source." *In re Mucky Duck Mustard Co.*, 6 USPQ2d 1467, 1470 n.6 (TTAB 1988), *aff'd*, 864 F.2d 149 (Fed. Cir. 1988) (unpublished table decision). *See also In re Albert Trostel & Sons Co.*, 29 USPQ2d 1783, 1785-86 (TTAB 1993).

The Examining Attorney also submitted numerous third-party websites showing that the online retailers offer both types of goods as those involved herein, that is, cosmetics and perfume, under the same mark. A representative sample includes the websites of Nordstrom, Macy's, Sephora, and Uncommon Scents. Indeed, evidence of record from Registrant's website shows that, in addition to perfumes, she also offers body butter and body wash under the mark I AM.

As indicated earlier, the language "associated with William Adams, professionally known as 'will.i.am'" is not a limitation on the goods or the trade channels. Because there are no meaningful limitations in the identification of goods in either the application or the cited registration, we must presume that the goods travel through all usual channels of trade and are offered to all normal potential purchasers. *In re Elbaum*, 211 USPQ 639, 640 (TTAB 1981); *see also Paula Payne*

*Prods. Co. v. Johnson Publ'g Co.*, 473 F.2d 901, 177 USPQ 76, 77 (CCPA 1973). Applicant's assertion that Registrant's products are marketed through its own website (www.iamdanica.com) and at spas and fine boutiques is irrelevant inasmuch as the identification of goods does not reflect such limitations. Nor does Applicant's identification of goods limit Applicant from marketing its goods through similar trade channels.

The record evidence demonstrates that cosmetics, personal care and beauty products, and perfumes would be sold by retail stores, online retailers, cosmetics/personal care departments of chain stores, and the like. Further, the goods would be bought by the same classes of purchasers, including ordinary consumers who would not exercise a high degree of care when purchasing these goods. Products of the type involved herein may be relatively inexpensive and subject to impulse purchase. *L'Oreal S.A. v. Marcon*, 102 USPQ2d at 1441 (cosmetics and personal care products tend to be relatively inexpensive and may be subject to impulse purchase). "When products are relatively low-priced and subject to impulse buying, the risk of likelihood of confusion is increased because purchasers of such products are held to a lesser standard of purchasing care." *Recot Inc. v. M.C. Becton*, 214 F.3d 1322, 54 USPQ2d 1894, 1899 (Fed. Cir. 2000); *Specialty Brands, Inc. v. Coffee Bean Distributors, Inc.*, 748 F.2d 669, 223 USPQ 1281, 1282 (Fed. Cir. 1984).

The similarity of the goods, and the identity of the trade channels and purchasers, as well as the conditions of sale, are factors that weigh in favor of a finding of a likelihood of confusion.

### Other Factors

The purported lack of fame of Registrant's mark, as argued by Applicant, is of little consequence. *See* TMEP § 1207.01(d)(ix). Because of the nature of the evidence required to establish the fame of a registered mark, the Board normally does not expect the Examining Attorney to submit evidence as to the fame of the cited mark in an *ex parte* proceeding. *See In re Thomas*, 79 USPQ2d 1021, 1027 n.11 (TTAB 2006). And, in an *ex parte* analysis of the *du Pont* factors for determining likelihood of confusion, the "fame of the mark" factor is normally treated as neutral when no evidence as to fame has been provided. *See id.*; *see also In re Davey Prods. Pty Ltd.*, 92 USPQ2d 1198, 1204 (TTAB 2009) (noting that the absence of evidence as to the fame of the registered mark "is not particularly significant in the context of an *ex parte* proceeding").[7]

Applicant also argues that purchasers of perfume, particularly high-end perfumes such as those offered by Registrant, are highly sophisticated and very particular about the source of the perfume. Applicant's contention that Registrant's

---

[7] Applicant's fame or renown is another matter. The fame of *either* mark increases the likelihood of confusion by making it more likely that purchasers will remember the famous mark and think of it when encountering similar goods sold under a similar mark. Of course, such likelihood of confusion is only a reason to *refuse* a new registration, not grant one. To the extent that Mr. Adams and Applicant's mark are well-known, such fact supports refusal of Applicant's application, because when confusion is likely, it is the prior Registrant which must prevail. Even if it eclipses the renown of the prior Registrant, Applicant's fame does not entitle it to usurp the cited Registrant's rights in the mark.

customers are sophisticated is not supported by any evidence; further, as indicated above, because Registrant's identification does not limit its perfume to a particular price point, we must treat the goods as including inexpensive as well as high-end perfumes, and therefore presume that purchasers for these goods include ordinary consumers who may buy inexpensive perfume on impulse. Thus, this factor favors a finding of a likelihood of confusion. However, even if we were to assume that purchasers of Registrant's perfume are discriminating, it is settled that even sophisticated purchasers are not immune from source confusion, especially in cases such as the present one involving identical marks and related goods. *See In re Research Trading Corp.*, 793 F.2d 1276, 230 USPQ 49, 50 (Fed. Cir. 1986) (citing *Carlisle Chemical Works, Inc. v. Hardman & Holden Ltd.*, 434 F.2d 1403, 168 USPQ 110, 112 (CCPA 1970) ("Human memories even of discriminating purchasers ... are not infallible.")). *See also In re Shell Oil Co.*, 26 USPQ2d at 1690; *In re Decombe*, 9 USPQ2d 1812 (TTAB 1988). The identity of the marks and the relatedness of the goods sold thereunder outweigh any presumed sophisticated purchasing decision. *See HRL Associates, Inc. v. Weiss Associates, Inc.*, 12 USPQ2d 1819 (TTAB 1989), *aff'd,* 902 F.2d 1546, 14 USPQ2d 1840 (Fed. Cir. 1990) (similarities of goods and marks outweigh sophisticated purchasers, careful purchasing decision, and expensive goods). *See also Stone Lion Capital Partners, LP v. Lion Capital LLP*, 746 F.3d 1317, 110 USPQ2d 1157, 1162-63 (Fed. Cir. 2014).

After considering all of the evidence of record and arguments pertaining to the relevant *du Pont* likelihood of confusion factors, we find that there is a likelihood of confusion between Applicant's mark and Registrant's mark.

*Decision:* **The refusal of registration is affirmed.**